[L. A. No. 23031. In Bank. July 9, 1954.]

RALPH D. PAONESSA, Petitioner, v. STATE BAR OF CALIFORNIA, Respondent.

Leonard Wilson and Robert P. Dockeray for Petitioner.

Garrett H. Elmore, Karl F. Geiser and Jack A. Hayes for Respondent.

THE COURT.—Petitioner, a member of the Bar, was charged in five counts with conduct allegedly requiring discipline. In count one it was claimed he had represented Mrs. Olive Jean Deveux in an annulment action against her husband, and that he had prepared the complaint so as to allege that before marriage Deveux falsely represented he desired children but after marriage had refused to cohabit so as to cause children to be conceived; that petitioner knew at the commencement of the action that the parties had a child but petitioner instructed Mr. and Mrs. Deveux not to disclose the child's existence and instructed plaintiff to testify that Deveux refused to cohabit with or have children by her.

Count two charged similar conduct in connection with petitioner's representation of Louis Stander in an annulment action by him against his wife. The parties to that action had two children as issue of the marriage, but petitioner instructed Stander to testify that there were none.

Count three charged that in the annulment action in count two petitioner caused, without authorization, Stander to sign Mrs. Stander's name to a document filed in the action, called a general appearance and acknowledgment of service of process, and did not disclose the false signing to the court.

Count four charged that over a period of time petitioner filed 40 annulment actions in Riverside County and in many of them made the same allegations of promise of children and refusal to cohabit mentioned in the first two counts; that some of the parties resided in Los Angeles County, rather than Riverside.

Count five was a general allegation charging no specific acts of misconduct.

The local administrative committee found all of the charges to be true and recommended two years' suspension. The Board of Governors of The State Bar dismissed the third, fourth and fifth counts, but adopted the findings on counts one and two and recommended suspension for two years on

the theory that petitioner had violated his oath and duties as an attorney (Bus. & Prof. Code, §§ 6103, 6067, 6068) and rule 11 of the Rules of Professional Conduct (26 Cal.2d 35), and had committed acts involving moral turpitude (Bus. & Prof. Code, § 6106).

Petitioner contends that the evidence was insufficient to support the findings on counts one and two, and in that connection, that the great time elapsing between the annulment actions and the disciplinary proceedings placed him at a disadvantage in preparing his defense. There is no dispute as to either of the counts that petitioner represented the persons mentioned in the annulment actions; that those actions were based on the fraud alleged with reference to bearing children as heretofore set forth; that witnesses were called to prove the allegations, and that there were children which were the issue of the marriages involved in those cases and that the annulments were granted. Petitioner asserts the evidence is insufficient to show he knew of the children when he prepared the complaints and tried the actions.

In the Deveux matter, Deveux, although not having a very clear memory on the subject, testified that prior to the commencement of the action, he went to petitioner's office with his wife at her suggestion and signed papers and that petitioner said there was "supposed to be no child involved in the case at all"; that he told petitioner they had a child, but petitioner "didn't want to state in the case, I guess, that there was a child involved"; that petitioner said they should arrange for the child's care between them and it "was not going to be on the papers"; that when they were in petitioner's office, he brought up the subject of the child and "He just came out and told me we would have to make arrangements between us about the child and it would not show on the annulment." The parties had been married in 1945 and consulted petitioner in 1948, when the action was commenced. For corroborating circumstances, respondent refers to petitioner's failure to question his witness, Mrs. Claraday, his stenographer at the time, concerning the matter while he did question her about the Stander case; that he handled both the Deveux and Stander cases within three months of each other; that he told his clients where the marriage was of long standing, the judge might not be willing to grant an annulment.

Petitioner first testified that he had no recollection of the case or conversations in connection therewith except the name of the client and that he prosecuted the action. Later he

testified that he did not know of the child and had not told Deveux not to mention it. This testimony was argumentative however. For example, he said, "I never made any such statement at all. Why would I tell him [Deveux]? Perhaps you might say I might tell his wife, my client, but why would I tell him? Why would I tell him this is so? . . .

"I don't know, but I remember such a conversation, but it couldn't have been this case. But if it was, if that was the case, then it wasn't his child. As I say, I can't say this is it, but I remember of a person coming in that had a child, but it was not the child of the man." Again he testified that he remembered the occasion when Mrs. Deveux called at his office in connection with the annulment.

In the Stander case it appears that the Standers had been married in 1927 and separated in 1947, and Stander consulted petitioner in 1948 (the annulment action was filed and judgment obtained in that year). There were two children as issue of the marriage, Robert, 18 or 19, and Joan, 15, when the action was filed. An indictment was returned against petitioner for subornation of perjury, but the criminal proceedings were dismissed before trial. Stander testified that he consulted petitioner and stated that he wanted a divorce. Petitioner suggested an annulment and Stander inquired how he could get an annulment after 20 years of marriage and two children. Petitioner said he could get one. Stander told petitioner of the length of the marriage and the children. A property settlement agreement mentioning the children was admittedly prepared in petitioner's office by his secretary. Stander said it was prepared by petitioner. There was some conflict in his testimony.

Mrs. Stander testified, with reference to the property settlement agreement, that she telephoned petitioner after her husband had left the agreement to be signed by her: ". . . I asked him how come his name wasn't signed. He said it wasn't necessary for his signature to be there. I said it was very strange, and he said not to worry about it. I said, 'Is that an agreement?' He said, 'Yes, it is.' I said, 'Well, my husband brought it to me and I want to know about the part about the money, to see that we get money, my children and I.' He said everything would be taken care of and not to worry. . . .

"MR. REDWINE: But you said, 'Isn't there going to be money for me and the children?'

"Mrs. Stander: Yes, I said, 'The part of the agreement about the money, is that going to take care of the children and I?' He said, 'Yes' and not to worry, but I can see now I did a foolish thing by signing it."

Petitioner testified that he did not know the Standers had any children. This was corroborated by petitioner's then secretary Mrs. Claraday and a Miss Forler, a friend of Stander's, who were present at the conference between Stander and petitioner. Mrs. Claraday also testified with reference to the property settlement agreement that Stander brought it in for her to type; that there was mention of children therein but Stander said he doubted they were his and not to tell petitioner about them.

Duber, an investigator employed by petitioner when the grand jury was investigating charges against him, testified that when he first contacted Stander as to whether he had told petitioner of his children, Stander said it was "dog eat dog" and it was either him or petitioner. Later, when promised the sum of $2,000 he told Duber, and made an affidavit to the effect, that he had not told petitioner about the children. Petitioner claims that little credit may be given to Stander's testimony. He does not mention Mrs. Stander's testimony concerning the telephone conversation she had with petitioner in regard to the agreement. This testimony was not impeached.

With reference to the lapse of time between the offenses and the proceedings before The State Bar, it appears that the offenses were committed in 1948. Investigations leading to criminal proceedings were pending in 1949. The hearings before The State Bar began in 1952 and continued in 1953. It does not appear, however, that petitioner was under any greater handicap with reference to recalling past events than the witnesses respondent relied upon. Moreover petitioner eventually recalled the Deveux matter and did remember the Stander case.

 The evidence appears to support the charges of unprofessional conduct contained in counts one and two and the only question would appear to be the one of discipline. As stated above the local administrative committee found that all five counts were sustained and recommended that petitioner be suspended for a period of two years. The Board of Governors dismissed counts three, four and five but found that petitioner was guilty of the charges contained in counts one and two and recommended suspension for two years.

The evidence appears ample to sustain the charges contained in counts one and two, and there can be no question that petitioner's conduct as delineated in those counts amounted to moral turpitude. Such being the case the discipline recommended by the Board of Governors of two years' suspension is amply justified.

It is therefore ordered that petitioner be suspended from the practice of law for the period of two years. This order to take effect 30 days after the filing of this opinion.